Larry INGRAM *v.* The CITY OF PINE BLUFF; Pine Bluff Planning Commission; Dale Dixon, Dutch King, and Jerry Taylor, Individually and In Their Official Capacities

03–342                                                     133 S.W.3d 382

Supreme Court of Arkansas
Opinion delivered December 4, 2003

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *M. Stephen Bingham* and *Annamary C. Dougherty*, for appellant.

*Patricia J. Hays*, for appellees.

W.H. "DUB" ARNOLD, Chief Justice. Appellant Larry Ingram appeals from a December 16, 2002 order of the Jefferson County Circuit Court granting the motion for judgment on the pleadings of appellees, The City of Pine Bluff, the Pine Bluff Planning Commission and individual appellees Dale Dixon, current Pine Bluff Mayor Dutch King, and former Mayor Jerry Taylor. Appellant's complaint below listed five claims on which he based his prayer for relief. The judgment on the pleadings was granted because the trial court determined it was without jurisdiction to hear the case due to the appellant's failure to comply with Inferior Court Rule 9 in filing a timely appeal from the City Council's decision. We affirm the order as to the City of Pine Bluff and the Pine Bluff Planning Commission, and we reverse as to the individual appellees Dixon, King, and Taylor.

In March, 1997, Ingram received a notice that his rental property would be considered for demolition at the April 7, 1997 meeting of the Pine Bluff City Council. Appellant had his agent, Bill Price, contact Dale Dixon, a City Councilman who was also the head of the Pine Bluff Planning Commission. Mr. Dixon advised that he would have Ingram's property removed from consideration and that Mr. Ingram did not need to appear at the City Council meeting. Neither Ingram nor his agent attended the meeting, but Dixon made no attempt to remove appellant's property from consideration for demolition. The City Council passed a resolution to raze the property in question. The resolution gave Ingram ten (10) days in which to raze the building. Neither the City nor Dixon advised Ingram or his agent that the resolution had passed. Ingram did nothing because he neither attended the City Council meeting nor watched it on television. Appellant claims that he had no idea that the resolution had passed.

In August of 1997, approximately four (4) months after the passage of the resolution, the City demolished the property in question. Ingram approached Dixon, and he was told to attend meetings of the City Council and City Planning Commission. He was asked to present proof substantiating his loss, but he was never compensated for that loss. In early 1999, Ingram initiated a lawsuit in federal court against the defendants. The defendants successfully moved for dismissal on the ground that appellant's claims were not ripe for federal adjudication because he had not exhausted all of his

remedies in state court. The Appellant then filed his complaint in the Circuit Court of Jefferson County. The defendants included the City of Pine Bluff, the Pine Bluff Planning Commission, and various city officials, both individually, and in their official capacities.

The circuit court complaint was for declaratory and injunctive relief and for damages. The complaint asserted causes of action consisting of five counts: 1) for a declaration that the appellees' actions were under color of law and caused Ingram's deprivation of property without due process or just compensation under the Arkansas Civil Rights Act; 2) for wrongfully seizing his property without substantive or procedural due process protected by the Arkansas Constitution; 3) for injunctive relief to ensure that all interested parties receive proper notice of demolition proceedings; 4) for fraud due to misrepresentations on the part of Dale Dixon, an individual defendant and a member of the Pine Bluff City Council and head of the Pine Bluff Planning Commission; and 5) for breach of contract due to Ingram's detrimental reliance on promises and representations made to him by Dixon. The appellees moved to dismiss appellant's complaint for failure to state a claim, but that motion was denied.

The matter was set for trial beginning November 12, 2002. Prior to trial, Judge H.A. Taylor indicated that he would not be able to preside due to ill health. As a result, Special Judge Floyd Lofton was appointed to the case in late October 2002.

On October 30, 2002, the appellees filed a motion for judgment on the pleadings. The appellees contended that Mr. Ingram should have filed his appeal within 30 days of the adoption of the City's resolution pursuant to Inferior Court Rule 9. Since that had not occurred, the appellees asserted that the circuit court was without jurisdiction over appellant's claims.

The trial court scheduled a hearing for the morning of the trial on the motion for judgment on the pleadings. Following argument, the trial court granted the motion. Orders were entered on December 17, 2002, holding that the circuit court did not have jurisdiction and denying appellant's motion for reconsideration.

On January 2, 2003, Ingram timely filed his notice of appeal. He appeals on two points: 1) The trial court erred in granting defendants' motion for judgment on the pleadings, and 2) Defen-

dants should have been estopped from contesting the jurisdiction of the trial court.

Ingram's first point on appeal is that because the case had been pending for over three years, and the trial was scheduled to begin in less than two weeks, appellees were not entitled to a judgment on the pleadings. Ark. R. Civ. P. 12(c) governs motions on the pleadings and provides that:

> (c) *Motion for Judgment on the Pleadings.* After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56.

The appellees, however, contend that they did not intend to delay trial but rather to prevent one from occurring at all due to the court's lack of subject matter jurisdiction. It is well settled that, "[t]he defense of lack of jurisdiction over the subject matter is never waived and may be raised at any time." Ark. R. Civ. P. 12(h)(2). *State v. Dawson,* 343 Ark. 683, 38 S.W.3d 319 (2001).

In granting the motion on the pleadings, the trial court relied on Inferior Court Rule 9, which governs appeals from inferior courts to circuit court. Inferior Court Rule 9 provides in pertinent part:

> *(a) Time for Taking Appeal.* All appeals in civil cases from inferior courts to circuit court must be filed in the office of the clerk of the particular circuit court having jurisdiction of the appeal within thirty (30) days from the date of the entry of the judgment.

Rule 9 applies to city council and planning commission resolutions via Ark. Code Ann. § 14-56-425 (Repl 1998) which states:

> In addition to any remedy provided by law, appeals from final action taken by the administrative and quasi-judicial agencies concerned in the administration of this subchapter may be taken to the circuit court of the appropriate county where they shall be tried *de*

*novo* according to the same procedure which applies to appeals in civil actions from decisions of inferior courts, including the right of trial by jury.

It is well settled that the filing requirements of Rule 9 are mandatory and jurisdictional, and failure to comply prevents the circuit court from acquiring subject–matter jurisdiction. *Douglas v. City of Cabot,* 347 Ark. 1, 59 S.W.3d 430 (2001); *Murray v. State,* 344 Ark. 7, 37 S.W.3d 641 (2001); *State v. Dawson,* 343 Ark. 638, 38 S.W.3d 319 (2001); *Pike Ave. Devel. Co. v. Pulaski County,* 343 Ark. 338, 37 S.W.3d 177 (2001); *Night Clubs, Inc. v. Fort Smith Planning Commission,* 336 Ark. 130, 984 S.W.2d 418 (1999); *Board of Zoning Adjustment of City of Little Rock v. Cheek,* 328 Ark. 18, 942 S.W.2d 821(1997). Moreover, Rule 9 demands strict, not merely substantial, compliance. *J & M Mobile Homes, Inc. v. Hampton,* 347 Ark. 126, 60 S.W.3d 481 (2001). Ingram waited over two years to file an appeal of the City's decision to the circuit court. His appeal was well outside the thirty–day requirement and was thus untimely because these had to do with action by the city council. The circuit court did not have subject matter jurisdiction over counts one, two, and three. Therefore, the circuit court correctly granted the motion on the pleadings as to those counts.

Ingram argues that he could not have complied with Rule 9 even if he had wanted to because he was denied due process in that the City never gave him notice of its decision to demolish his house after the April 7, 1997 meeting. It is undisputed that Ingram received notice of the April 7, 1997 meeting a month earlier, but neither he nor his property manager, Bill Price, attended the meeting. Furthermore, it is also undisputed the meetings of the Pine Bluff City Council are televised once per week for two weeks. The City waited 120 days before demolishing the building in question. However, Ingram never followed up on whether or not the City had passed the resolution to demolish his structure.

The appellees claim that due process does not require notice of its intent to abate the nuisance after the City Council meeting. We agree. Appellees cite *Samuels v. Meriwether,* 94 F.3d 1163 (8th Cir. 1996), where the City of Hope, Arkansas, informed Samuels that his building was unsafe and that he had thirty (30) days to bring the building up to code or else it would be demolished. While Samuels did attend the City Council meeting, he, like Ingram, claims that because he did not receive notice of

the City's decision to destroy the building, he had been denied due process. The court held that, "[w]here a property owner is given written notice to abate a hazard on his property and has been given an opportunity to appear before the proper municipal body considering condemnation of the property, no due process violation occurs when the municipality abates the nuisance pursuant to the condemnation notice." *Id.* at 1166-67 (citing *Hagen v. Traill County*, 708 F.2d 347, 348 (8th Cir. 1983) (per curiam) (upheld legality of destruction of building for failure to abate nuisance after notice and hearing)). Citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed2d 18 (1976) the court stated that, "In general, procedural due process requires that a hearing before an impartial decision maker be provided at a meaningful time and in a meaningful manner prior to a governmental decision which deprives individuals of a liberty or property interest." *Id.* at 1166.

■ Like Samuels, Mr. Ingram had an opportunity to be heard at a meaningful time and in a meaningful manner. The Eighth Circuit went on to add that, "Without more, no due process violation has occurred. Due process does not require additional opportunities to abate nuisances or to meet with City officials after the notice and hearing have been provided." *Id.* at 1167. We find the Eighth Circuit's rationale to be persuasive, and we hereby adopt it. Because Ingram failed to perfect his appeal within thirty (30) days under Rule 9, the trial court did not have jurisdiction to hear the issues that arose out of the City Council's resolution to destroy his building. We affirm the trial court's granting of the motion for judgment on the pleadings with respect to counts one, two, and three of the complaint.

■ Appellant next contends that even if Inferior Court Rule 9 applies as to the claims involving City action, it does not apply to the individual appellees for their actions outside of their official capacities, and the court erred in granting the motion for judgment on the pleadings against the individual appellees Dixon, King, and Taylor. Motions for judgment on the pleadings are not favored by the courts, and "if there is joined an issue of fact upon which, if supported by the evidence, a valid judgment may be based, a judgment on the pleadings is improper. The court cannot anticipate what the proof will show." *Reid v. Karoley*, 229 Ark. 90, 313 S.W.2d 381 (1958). Ingram alleges that Dixon told him that he

would "take care of it" and that his resolution regarding the demolition of his property would be taken off the Planning Commission's agenda.

In addition, Ingram claims that as a result of the representations made by Dixon, he was defrauded by him, and that he detrimentally relied upon Dixon's promise and his authority as the head of the City Council Planning Commission. We have held that, "in considering a motion for judgment on the pleadings for failure to state facts upon which relief can be granted, the facts in the complaint must be treated as true and viewed in the light most favorable to the party seeking relief." *Smith v. Amer. Greetings Corp.*, 304 Ark. 596, 599, 804 S.W.2d 683, 685 (1991) (citing *Battle v. Harris*, 298 Ark. 241, 766 S.W.2d 431 (1989)). Ingram could not have raised the fraud and breach of contract claims against the individual appellees, acting in their personal capacities, before the City Council Planning Commission. Because Rule 9 did not apply to the causes of action against the individual appellees, the trial court had jurisdiction to hear these claims. Therefore, we reverse the judgment on the pleadings as to those claims involving appellees Dixon, King, and Taylor, and we remand the case to the trial court to proceed on those claims.

Ingram's final point on appeal is that the appellees should have been estopped from contesting the jurisdiction of the trial court. Specifically, Ingram asserts that the appellees took inconsistent positions in different forums to defeat his claims. We disagree. In federal court, Ingram alleged a Fifth Amendment takings claim as well as violations of his federal constitutional rights of due process and equal protection. Appellees correctly point out that it is well settled law that a property owner, "[h]as not suffered a violation of the just compensation clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation." *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *Little v. City of Afton*, 785 F.2d 596, 609 (8th Cir. 1986). When the state provides an adequate process for obtaining compensation, no Fifth Amendment violation occurs until after the compensation is denied. *McKenzie v. City of White Hall*, 112 F.3d 313, 317 (8th Cir. 1997).

The federal district court agreed with the appellees that Ingram's takings claim was not ripe because Ingram had not attempted to seek compensation through state court proceedings and been denied such compensation. Although Ingram could have gone forward with his other claims in the federal district court, he chose not to do so. Therefore, the federal court dismissed the entire suit so that Ingram could exhaust his state remedies in seeking just compensation for his loss. Once in state court, the appellees appropriately availed themselves of the Rule 9 defense. Therefore, we affirm the trial court's ruling that the appellees were not estopped from contesting the jurisdiction of the trial court.

Affirmed in part, reversed and remanded in part.