2009 Ark. 224

**Herman BROCK, Appellant,**

v.

**Tab TOWNSELL, Appellee.**

No. 08–807.

Supreme Court of Arkansas.

April 23, 2009.

James F. Lane, for appellant.

Michael L. Murphy, Conway City Attorney and Kurt J. Meredith, Deputy City Attorney, for appellee.

ANNABELLE CLINTON IMBER, Justice.

Appellant Herman Brock appeals an order of the Faulkner County Circuit Court dismissing his complaint and granting summary judgment in favor of Appellee Tab Townsell, Mayor of the City of Conway, Arkansas. On appeal, Brock argues that the circuit court erred in finding, as a matter of law, that the land-use ordinances of the City, adopted pursuant to Arkansas Code Annotated sections 14–56–401–14–56–426 (Repl.1998 & Supp.2007), do not conflict with the statutory authority of the Arkansas Department of Health, pursuant to Arkansas Code Annotated section 20–17–903 (Repl.2005), to grant or deny permits for cemeteries. Brock also challenges the circuit court's finding that section 20–17–903 is subject to the properly adopted land-use ordinances of Arkansas cities. This appeal presents a significant issue needing clarification of the law and a substantial question of law concerning the interpretation of an act of the General Assembly. Therefore, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(b)(5) and (6) (2008). We find no error and affirm.

In September of 1994, the City of Conway adopted a zoning ordinance, Ordinance 0–94–54, that requires the issuance of a conditional-use permit in order for burial facilities, including cemeteries, to be located on property in an agricultural zoning district. On July 21, 2003, Brock, who resided in Conway on a piece of real property in an agricultural zoning district, applied to the Conway Planning Commission for a conditional-use permit so that he might establish a family cemetery on his property. Brock's first request was withdrawn, and his second request was unanimously denied by the Commission on October 20, 2003. Brock appealed to the Conway City Council, which voted 7–1 to deny his request on November 11, 2003. Brock did not appeal from this decision to the circuit court.

In the meantime, on July 30, 2003, Brock submitted the following handwritten request to Townsell: "I, Herman Brock, am making a request to the Mayor, Tab Townsell, of Conway, AR, for a family cemetery and to have it registered." On August 1, 2003, the Chief Engineer at the Arkansas Department of Health notified Townsell by letter that an engineer for the Department had inspected the proposed location and reviewed the plans for the cemetery, neither of which indicated that a public-health problem would result from the construction of the cemetery. The

Department recommended approval of Brock's request and included blank permit forms for Townsell's completion, if he "concur[red] in the cemetery request." Townsell did not grant Brock's request.

Brock filed a complaint against Townsell in the circuit court on July 23, 2004. He sought a mandatory injunction directing Townsell to grant the permit and argued that, pursuant to section 20–17–903, Townsell had no discretion to deny his request. Brock amended his complaint on October 19, 2004, to add a claim for declaratory judgment. Townsell filed a motion for summary judgment, asserting that section 20–17–903 has no application to cities of the first class such as Conway. Brock filed a response and counter-motion for summary judgment, contending that the enactment of section 20–17–903 repealed by implication Arkansas Code Annotated section 14–54–803 (Repl.1998), which empowers cities of the first class to prohibit the burial of the dead within their limits. Townsell responded, arguing that section 20–17–903 has no application to cities that have adopted zoning ordinances regulating the burial of the dead in accordance with sections 14–56–401 through 14–56–426. Brock replied and asserted that the City's adoption of the zoning ordinance could not be deemed to have repealed section 20–17–903. The circuit court did not hold a hearing on the summary-judgment motions.

On March 24, 2007, the circuit court issued a letter opinion finding that the land-use ordinances enacted by the City in accordance with sections 14–56–401 through 14–56–426 do not conflict with the Health Department's authority to grant or deny applications for cemeteries. Specifically, "the Arkansas Health Department's findings are subject to properly adopted land use ordinances of Arkansas cities." A judgment and order, filed April 28, 2008, memorialized these conclusions. In that order, the circuit court granted Townsell's summary-judgment motion, denied Brock's summary-judgment motion, and dismissed the complaint. Brock filed a timely notice of appeal.

As a preliminary matter, we must address our jurisdiction over this appeal. Townsell argued below that the circuit court lacked subject-matter jurisdiction over Brock's claims due to Brock's failure to timely and properly appeal from the Conway City Council's decision to deny his permit application. If the circuit court was without subject-matter jurisdiction, this court would likewise be without jurisdiction to hear the appeal. *Clark v. State*, 362 Ark. 545, 546, 210 S.W.3d 59, 60 (2005) (citing *Priest v. Polk*, 322 Ark. 673, 679, 912 S.W.2d 902, 905 (1995)). This issue is not fully developed in the parties' briefs on appeal, but subject-matter jurisdiction is an issue that can and indeed must be raised by this court sua sponte. *Viravonga v. Samakitham*, 372 Ark. 562, 568, 279 S.W.3d 44, 49 (2008).

Arkansas Code Annotated section 14–56–425 (Repl.1998), captioned "Appeals to circuit court," is part of a chapter governing municipal building and zoning regulations and is part of a subchapter governing municipal planning. It provides as follows, in its entirety:

> In addition to any remedy provided by law, appeals from final action taken by the administrative and quasi-judicial agencies concerned in the administration of this subchapter may be taken to the circuit court of the appropriate county where they shall be tried de novo according to the same procedure which applies to appeals in civil actions from decisions of inferior courts, including the right of trial by jury.

Ark.Code Ann. § 14–56–425. We have interpreted section 14–56–425 to incorporate the |₅appeal procedure found in Arkansas District Court Rules 8 and 9.[1] *Combs v. City of Springdale*, 366 Ark. 31, 33, 233 S.W.3d 130, 132 (2006) (citing *Ingram v. City of Pine Bluff*, 355 Ark. 129, 133 S.W.3d 382 (2003)). In particular, Rule 9 provides that an appeal to circuit court shall be taken by filing a record of the proceedings had in the district court. Dist. Ct. R. 9(b) (2003). Alternatively, an appellant may perfect an appeal by filing an affidavit showing that he or she has requested the clerk of the district court to prepare and certify the record and that the clerk has neglected or refused to do so. *Id.* § (c). All appeals to circuit court must be filed in the office of the clerk of the particular circuit court having jurisdiction within thirty days from the date of entry of judgment. *Id.* § (a).[2] The filing requirements of Rule 9 are mandatory and jurisdictional, and failure to comply prevents the circuit court from acquiring subject-matter jurisdiction. *Combs v. City of Springdale*, 366 Ark. at 34, 233 S.W.3d at 133.

This court has previously held that Rule 9 applies to city council and planning |₆commission resolutions via section 14–56–425. *Ingram v. City of Pine Bluff*, 355 Ark. at 134, 133 S.W.3d at 385. We have further held that section 14–56–425 applies to appeals of actions of a city council when the act complained of is the city's applica-

tion of its zoning regulations. *Green v. City of Jacksonville*, 357 Ark. 517, 521, 182 S.W.3d 124, 126 (2004) (citing *City of Jonesboro v. Vuncannon*, 310 Ark. 366, 837 S.W.2d 286 (1992)).

It is undisputed that Brock did not perfect an appeal from the City Council to the circuit court within the thirty-day time limitation of Rule 9. However, Brock suggested below that his complaint, which sought declaratory and injunctive relief, was not intended as an appeal of the City Council's decision. This court has previously affirmed grants of summary judgment and judgment on the pleadings for failure to comply with Rule 9, even when the complaint filed in circuit court seeks declaratory and injunctive relief and therefore does not appear to be a direct appeal of a city council's decision. *See Green v. City of Jacksonville, supra; Ingram v. City of Pine Bluff, supra.* In *Green*, the Jacksonville City Council voted to approve the appellant's proposed plat with the condition that he would construct sidewalks in accordance with an ordinance requiring sidewalks in all subdivisions. 357 Ark. at 519, 182 S.W.3d at 125. The appellant filed an action against the city in circuit court, seeking a declaration that the city council's action was void and an injunction to stop the city council from forcing him to construct sidewalks. *Id.* This court affirmed the circuit court's grant of summary judgment in favor of the city on the

---

**1.** Formerly known as the Inferior Court Rules, the District Court Rules were revised and renamed effective January 1, 2005.

**2.** Substantial amendments have been made to Rule 9, the most recent of which became effective January 1, 2009, and completely changed the method for perfecting an appeal to circuit court. *In re Ark. Dist. Court Rules; Rules of Civil Procedure; Rules of Evidence; Rules of the Supreme Court and Court of Appeals; and Rules of Appellate Procedure–Civil,* 374 Ark. App'x —— (Oct. 9, 2008) (per cu-

riam). However, because an attempt to appeal from the Conway City Council's decision in this case would have occurred in November or December of 2003, the version of Rule 9 applicable to this case is a former version. *See Ark. State Univ. v. Prof'l Credit Mgmt., Inc.,* 2009 Ark. 153, 299 S.W.3d 535. Moreover, because Brock failed to perfect an appeal within the thirty-day period provided for in each version of Rule 9, the outcome under either version would be the same.

basis that subject-matter jurisdiction was lacking due to the appellant's failure to appeal within thirty days. *Id.* at 519–20, 182 S.W.3d at 125–26. We rejected the appellant's argument that his complaint was not an appeal of the substance of the city council's decision, but rather an assertion that the city council had acted beyond its statutory and procedural authority. *Id.* at 520, 182 S.W.3d at 126.

Under the *Green* rationale, Brock may not circumvent the requirements of Rule 9 by seeking declaratory and injunctive relief if his complaint is actually an appeal of the City Council's decision. We conclude, however, that Brock has abandoned the avenue of relief available to him from the City Council and subsequent appeal of its decision. Instead, he sought relief from Townsell in accordance with section 20–17–903, making section 14–56–425 and Rule 9 inapplicable. Section 14–56–425 governs appeals from final action taken by "the administrative and quasi-judicial agencies" involved in the administration of municipal planning. Brock's complaint filed in circuit court was not an appeal of final action taken by the City Council. It was, instead, a complaint against Townsell based on his alleged failure to comply with a mandatory duty. Therefore, section 14–56–425 does not apply. Brock was not required to comply with the directives of Rule 9, and the circuit court had subject-matter jurisdiction of his claims.

Turning to the merits of the appeal, we note that Brock makes four distinct arguments in support of the proposition that the circuit court erred: 1) section 20–17–903 is applicable to cities of the first class, such as Conway; 2) there is an irreconcilable conflict between section 20–17–903 and the various statutes authorizing cities to enact zoning ordinances and regulate the burial of the dead, such that the doctrine of repeal by implication applies; 3) under article 12, section 4 of the Arkansas Constitution, a city's land-use ordinance cannot supersede an Arkansas statute on the same subject; 4) if the Department of Health recommends approval of a cemetery request, the mayor is without discretion to deny it. Each of these arguments is addressed individually below.

The standard of review used by this court in reviewing a grant of summary judgment is well settled. Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Sykes v. Williams,* 373 Ark. 236, 239–40, 283 S.W.3d 209, 213 (2008). Once a moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* at 240, 283 S.W.3d at 213. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable minds might reach different conclusions from those undisputed facts. *Id.* On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material question of fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. *Id.*

We review issues of statutory construction de novo. *Id.* It is for this court to decide what a statute means, and we are not bound by the circuit court's interpretation. *Id.* The basic rule of statutory construction is to give effect to the

intent of the General Assembly. *Id.* In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* Our court construes the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. *Id.* When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to the rules of statutory construction. *Id.* However, we will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Id.* We will accept a circuit court's interpretation of the law unless it is shown that the court's interpretation was in error. *Id.* Our court seeks to reconcile statutory provisions to make them consistent, harmonious, and sensible. *Id.*

*Applicability of Section 20–17–903*

While the circuit court made no specific ruling on this issue, Brock contends that section 20–17–903 applies to cities of the first class. We address the argument because the applicability of section 20–17–903 to first-class cities was relevant to Townsell's defense, and because this court may affirm a circuit court when it has reached the right result, even though it has announced the wrong reason. *Alphin v. Alphin,* 364 Ark. 332, 341, 219 S.W.3d 160, 166 (2005).

Section 20–17–903 is part of a title of the Arkansas Code governing the public health and welfare and is part of a chapter dealing with "Death and Disposition of the Dead." It provides that a person proposing to locate a cemetery or to extend the boundaries of an existing cemetery shall make written application to the county judge or mayor "of an incorporated city or town," depending on whether the cemetery or extension is to be located in the jurisdiction of a county or municipality. Ark.Code Ann. § 20–17–903(a). Before acting upon the application, the county judge or mayor shall refer it to the Arkansas Department of Health for investigation "from a sanitary standpoint." *Id.* § 20–17–903(b). The Department "shall take into consideration the proximity of the proposed cemetery or extension of a cemetery to human habitations, the nature of the soil, the drainage of the ground, the danger of pollution of valuable springs or streams of water, and such other conditions as would bear upon the situation." *Id.* Once the investigation is completed, the Department is to submit a report to the county judge or mayor "and either approve or disapprove the application." *Id.* § 20–17–903(c). Having received the report, the county judge or mayor, "as recommended by the division, shall either grant or deny the application." *Id.* § 20–17–903(d). If the application is granted, the county judge or mayor is to issue a permit, which shall be recorded in the office of the county judge or mayor. *Id.* § 20–17–903(e) & (f).

As Townsell points out, section 20–17–903 refers to "an incorporated city or town." *Id.* § 20–17–903(a). He asserts that it does not, therefore, apply to first-class cities. The pertinent question is whether a city of the first class, such as Conway, is also considered an incorporated city. In 1875, the General Assembly enacted laws governing the incorporation, organization, and government of municipal corporations. 1875 Ark. Acts 1. Municipal corporations were "divided into the classes following: Cities of the first, and cities of the second-class, and incorporated towns." *Id.* § 1. In addition:

All corporations which existed when the present constitution took effect for the purpose of municipal government, and described or denominated in any

law then in force, are hereby organized into cities of the first and second-class, as the case may be, and incorporated towns, with the territorial limits respectively prescribed or belonging. All municipal corporations having over five thousand inhabitants shall be deemed cities of the first-class. All cities having twenty-five hundred inhabitants and less than five thousand inhabitants shall be deemed cities of the second-class; all others shall be incorporated towns, and shall be governed respectively by the provisions of this act.

*Id.* § 5. These provisions are now codified at Arkansas Code Annotated sections 14–37–101 through 14–37–103 (Repl.1998).[3] According to the plain language of section 14–37–103, there are only three types of municipal corporations. Simply put, all incorporated cities must fall within one of two discrete categories, based upon population: cities of the first class or cities of the second class. This rationale is consistent with our previous interpretations of various statutes using the phrase "incorporated city or town," which we have taken to include all cities. *See, e.g., Dena Constr. Co., Inc. v. Burlington Northern R.R.,* 297 Ark. 547, 764 S.W.2d 419 (1989); *Little River County Bd. of Educ. v. Ashdown Special Sch. Dist.,* 156 Ark. 549, 247 S.W. 70 (1923); *Kansas City Southern Ry. Co. v. City of Mena,* 123 Ark. 323, 185 S.W. 290 (1916). Accordingly, Brock is correct in contending that section 20–17–903 applies to cities of the first class.

Further support for this conclusion is contained in another provision of Act 1 of 1875, which sets forth a method for inhabitants of a part of a county, not embraced within the limits of a city or incorporated town, to "be organized into a city or town." 1875 Ark. Acts 1, § 35. The language of Act 1 refers primarily to the creation of an incorporated town, but the statutes as they are now codified often refer to both cities and incorporated towns. *See* Ark.Code Ann. § 14–38–101–14–38–114 (Repl.1998 & Supp.2007). For example, section 14–38–104 provides that, if a county court finds that a petition for incorporation should be granted, the court shall "make out and endorse on the petition an order to the effect that the *city or incorporated town* as named and described in the petition may be organized." *Id.* § 14–38–104(a) (Supp. 2007) (emphasis added). This section as originally enacted by the General Assembly in 1875 referred instead to an order "to the effect that the incorporated town as named and described in the petition may be organized." 1875 Ark. Acts 1, § 37. In addition, Act 1237 of 2005 added section 14–38–115, which provides an alternative method of incorporation. 2005 Ark. Acts 1237. Section 14–38–115 states that the inhabitants of a part of a county not embraced within the limits of a city or incorporated town may apply to the county judge of the proper county to call for an election "on the issue of *incorporating a city or town*" and for electing municipal officials. Ark.Code Ann. § 14–38–115(a)(1) (Supp.2007) (emphasis added). As these statutes demonstrate, the legislature has often referred to cities as incorporated. Pursuant to sections 14–38–101 through 14–38–108 and section 14–38–115, cities are incorporated in the same manner as towns.

Moreover, as Brock points out, various statutes utilize the phrase "incorporated

---

**3.** The population limits have changed since the original enactment. Under the current version of the statute, municipal corporations having over two thousand five hundred inhabitants are cities of the first class, and municipal corporations having five hundred inhabitants or more and fewer than two thousand five hundred inhabitants are cities of the second class. All others are incorporated towns. Ark.Code Ann. § 14–37–103(a).

city or town" to refer to all municipal corporations: Arkansas Code Annotated section 17–25–301(b) (requiring proof of a contractor's license when applying to an authority of any incorporated city or town charged with the duty of issuing permits when the work to be done is twenty thousand dollars or more); section 18–15–601(d) (providing that no municipal corporation exercising eminent-domain power shall provide water service to any existing customer of any incorporated city or town without approval of the incorporated city or town); section 24–11–422(c) (providing additional retirement pay to members of police departments of cities that are divided by a street state line from an incorporated city or town); section 26–1–101(10) (defining, for taxation purposes, towns and cities as all cities or towns, incorporated or not, and all blocks, lots, or parts thereof assessed for taxation as such, whether they are part of an incorporated city or town or not). These examples support Brock's assertion that there is no meaningful distinction between incorporated cities and cities of the first and second class.

Townsell nonetheless argues that section 20–17–903 must be read in conjunction with section 14–54–803, which provides that "[c]ities of the first and second class and incorporated towns shall have the power to prohibit the burial of the dead within their limits." Ark.Code Ann. § 14–54–803(a). Townsell contends that these two statutes cover the same subject matter and that section 14–54–803 is more specific than section 20–17–903 and therefore controls. *See Ark. Soil & Water Conservation Comm'n v. City of Bentonville*, 351 Ark. 289, 300, 92 S.W.3d 47, 54 (2002) (noting that statutes relating to the same subject are said to be *in pari materia* and should be read in a harmonious manner, if possible). According to Townsell's interpretation, section 14–54–

803 and section 20–17–903 can be read harmoniously; section 20–17–903 applies to counties and incorporated cities and towns that are not of the first and second class, while section 14–54–803 applies to cities of the first or second class. The problem with this argument is that section 14–54–803 applies to all cities and towns, not just cities of the first or second class. *See* Ark.Code Ann. § 14–54–803(a). When section 14–54–803 was first enacted by the General Assembly in 1901, it applied only to cities of the first and second class. 1901 Ark. Acts 102, § 1. A 1929 amendment changed the statute to apply to "[c]ities of the first and second class and incorporated towns." 1929 Ark. Acts 202, § 1. Section 14–54–803 therefore applies to all municipal corporations. Accordingly, it is no more specific than section 20–17–903. Both statutes are applicable to all three types of municipal corporations.

*Repeal by Implication*

Next, Brock suggests that there are irreconcilable differences between section 20–17–903, on the one hand, and sections 14–54–802, 14–54–803, and 14–56–401 through 14–56–426 (specifically 14–56–416), on the other hand, such that the doctrine of repeal by implication applies. Section 14–54–802 provides that municipal corporations have the power to regulate the burial of the dead, provide places for interment outside the corporate limits, and prevent interment within the corporate limits. Ark.Code Ann. § 14–54–802(a) (Repl.1998). They may impose proper fines and penalties and shall also have the power to cause bodies interred contrary to the prohibition to be taken up and buried outside the municipal limits. *Id.* § 14–54–802(b). Sections 14–56–401 through 14–56–426 provide cities of the first and second class and incorporated towns with the power to adopt and enforce plans for the development of the municipality. *See id.* § 14–56–

402 (Repl. 1998). These statutes are to be construed liberally. *Id.* § 14–56–401 (Repl.1998). Section 14–56–416 specifically authorizes city planning commissions to submit recommended zoning ordinances to city councils and other equivalent legislative bodies. *Id.* § 14–56–416(a)(1) (Repl. 1998).

The basis of Brock's repeal-by-implication argument is that cities are given discretion regarding burial in accordance with the statutes authorizing the adoption of land-use ordinances and empowering municipalities to regulate burial within their limits; however, under section 20–17–903, as interpreted by this court in *Assembly of God Church, Lambert v. Ford,* 255 Ark. 132, 499 S.W.2d 273 (1973), cities are afforded no discretion. According to Brock, this constitutes an irreconcilable conflict, and because section 20–17–903 was more recently enacted, it repeals by implication the other statutes at issue.

This court has outlined its statutory-construction rules regarding repeal by implication on numerous occasions. *See Doe v. Baum,* 348 Ark. 259, 274, 72 S.W.3d 476, 484 (2002). The fundamental rule of the doctrine is that a repeal by implication is not favored and is never allowed except when there is such an invincible repugnancy between the provisions that both cannot stand. *Id.* at 274–75, 72 S.W.3d at 484. Repeal by implication is not a favored device in our interpretation of statutes, and we must construe all statutes relating to the same subject matter together. *Id.* at 275, 72 S.W.3d at 484–85.

There are two situations in which a repeal by implication may occur. The first is that, where the provisions of two statutes are in irreconcilable conflict with each other, there is an implied repeal by the latter one, which governs the subject matter so far as relates to the conflict-

ing provisions, and to that extent only. *Uilkie v. State,* 309 Ark. 48, 52–53, 827 S.W.2d 131, 133 (1992). Where there are two acts on the same subject, the rule is to give effect to both, if possible; but, if the two are repugnant in any of their provisions, the latter act, without any repealing clauses, operates to the extent of the repugnancy as a repeal of the first. *Id.* at 53, 827 S.W.2d at 134. The second situation is that a repeal by implication is accomplished where the legislature takes up the whole subject anew and covers the entire ground of the subject matter of a former statute and evidently intends it as a substitute, although there may be in the old law provisions not embraced in the new. *Id.* Thus, even where two acts are not in express terms repugnant, if the latter act covers the whole subject of the first and embraces new provisions, plainly showing that it was intended as a substitute for the first, it will operate as a repeal of that act. *Id.* Brock's argument is of the first type; therefore, the question for our consideration is whether there are irreconcilable conflicts between section 20–17–903 and the above-cited statutory provisions affording discretion to municipalities.

Section 20–17–903 was first enacted in 1929 as section 1 of Act 204, "An Act to Better Protect the Public Health of the Citizens of the State, and for Other Purposes." 1929 Ark. Acts 204. Act 204 also provided that all cemeteries shall be registered with the county judge or mayor, and that a copy of the registration shall be filed with the State Board of Health. *Id.* § 2. This provision is now codified as Arkansas Code Annotated section 20–17–901 (Repl.2005). Additionally, Act 204 provided that it shall be unlawful to bury a dead body outside of a registered cemetery, and that the person in charge of a cemetery shall keep a correct record, on a form prescribed by the State Board of Health,

of each body buried therein. 1929 Ark. Acts 204, § 3. This provision is now codified as Arkansas Code Annotated section 20–17–902 (Repl.2005). Act 204 was amended in 1985 to change all references to the State Board of Health to reflect the agency's new name, the State Department of Health. 1985 Ark. Acts 1014.

Section 14–54–802 was first enacted by the General Assembly in 1875. 1875 Ark. Acts 1, § 15. As noted earlier, section 14–54–803 was first enacted in 1901, as an act to "authorize the removal of dead from abandoned cemeteries and for other purposes." 1901 Ark. Acts 102. Section 14–54–803 was amended in 1929 to give identical authority to incorporated towns, in addition to cities of the first and second class. 1929 Ark. Acts 202. Therefore, section 20–17–903 was indeed enacted later than both section 14–54–802 and section 14–54–803. However, section 20–17–903 was originally enacted in the same year, and approved on the same day, that section 14–54–803 was amended. This court has held that the rationale requiring reconciliation of statutes on the same general subject matter when possible applies even more strongly to acts passed during the same legislative session. *Uilkie v. State*, 309 Ark. at 52, 827 S.W.2d at 133. "This court has also held that, where two acts were under consideration by the General Assembly at the same time, and were passed at the same session, this strengthens the presumption that there was no intention to repeal one by the other." *Id.* Accordingly, Brock's repeal-by-implication argument fails with respect to section 14–54–803; the legislature cannot be deemed to have intended to repeal section 14–54–803 by its enactment of section 20–17–903, when it amended section 14–54–803 in the same session.

Section 14–56–416 was first enacted by the General Assembly in 1957, as part of an act "to Provide for the Creation of City Planning Commissions in Cities of the First and Second Class and to Authorize Them to Provide for City Planning, Zoning, Sub–Division Control and for Other Purposes." 1957 Ark. Acts 186, § 5. Section 5 of Act 186 was amended in 1965 to include a provision relating to the control of land along navigable streams. 1965 Ark. Acts 134, § 1. Section 14–56–416 was thus enacted later in time than section 20–17–903, although section 20–17–903 was more recently amended. However, the 1985 amendment to section 20–17–903, changing all references to the State Board of Health to reflect the agency's new name (the State Department of Health), was clearly not substantive. Therefore, if the repeal-by-implication doctrine were applicable here, section 20–17–903 would be the provision repealed.

In any event, we hold that there are no irreconcilable conflicts between the statutes at issue. We first note that the statutes have very different purposes and accomplish very different tasks. Sections 14–56–401 through 14–56–426 provide municipalities with the power to conduct land-use planning, establish planning commissions, adopt zoning ordinances, and enforce land-use regulations. The purpose of providing such authority is to allow municipalities to "promote, in accordance with present and future needs, the safety, morals, order, convenience, prosperity, and general welfare of the citizens." Ark.Code Ann. § 14–56–403(a) (Repl.1998). Section 14–56–403 provides a non-exclusive list of permissible purposes of municipal planning:

(1) Efficiency and economy in the process of development;

(2) The appropriate and best use of land;

(3) Convenience of traffic and circulation of people and goods;

(4) Safety from fire and other dangers;

(5) Adequate light and air in the use and occupancy of buildings;

(6) Healthful and convenient distribution of population;

(7) Good civic design and arrangement;

(8) Adequate public utilities and facilities; and

(9) Wise and efficient expenditure of funds.

*Id.* § 14–56–403(b). Similarly, sections 14–54–802 and 14–54–803 are included in the chapter dealing with municipal powers. Like sections 14–56–401 through 14–56–426, they provide municipalities with the authority to regulate certain activities within their limits.

Conversely, section 20–17–903 provides a mechanism for a county or city to ensure public-health compliance before approving the construction or expansion of a cemetery. Section 20–17–903 makes clear that the Health Department's review is limited to a "sanitary standpoint," taking into consideration such factors as the proximity of the proposed cemetery or expansion to human habitations, the nature of the soil, the drainage of the ground, and the danger of pollution of valuable springs or streams of water. *Id.* § 20–17–903(b). Sections 20–17–901 and 20–17–902, enacted simultaneously with section 20–17–903, also reflect the public-health concerns inherent in the statutory framework. They require that a copy of a cemetery's registration be filed with the Department of Health and that the person in charge of a cemetery keep records as prescribed by the Department of Health. *Id.* §§ 20–17–901–20–17–902. In sum, the essential purpose of section 20–17–903 is not to provide more power or authority to municipalities.

Furthermore, there is no irreconcilable conflict between the statutes if section 20–17–903 is interpreted in accordance with the circuit court's finding. Specifically, if section 20–17–903 is viewed as being "subject to" the properly adopted land-use ordinances of cities, then the statutes can be construed harmoniously. Under our well-settled rules of statutory interpretation, this result is required. *See, e.g., Doe v. Baum*, 348 Ark. at 274–75, 72 S.W.3d at 484. For these reasons, we hold that the enactment of section 20–17–903 did not impliedly repeal sections 14–54–802, 14–54–803, and 14–56–401 through 14–56–426.

## Effect of Zoning Ordinance

Brock next argues that, under article 12, section 4 of the Arkansas Constitution, a land-use ordinance enacted by a city council cannot supersede an Arkansas statute on the same subject. This proposition is correct: "No municipal corporation shall be authorized to pass any laws contrary to the general laws of the state." Ark. Const. art. 12, § 4. However, as Townsell points out, the ordinance at issue here was not contrary to the general laws of the state; instead, it was enacted pursuant to state law, specifically Arkansas Code Annotated section 14–56–416. We have previously held that a city ordinance will not be held to conflict with a state statute when it is possible to read them in a harmonious manner. *City of Barling v. Fort Chaffee Redevelopment Auth.*, 347 Ark. 105, 116, 60 S.W.3d 443, 449 (2001) (citing *Bolden v. Watt*, 290 Ark. 343, 719 S.W.2d 428 (1986)). We conclude that Ordinance 0–94–54 may be read harmoniously with section 20–17–903. In short, municipalities that have passed a relevant zoning ordinance in accordance with section 14–56–416 may regulate the construction and expansion of cemeteries pursuant to the ordinance. Municipalities that have not done so have only the benefit of sections 20–17–903, 14–54–802, and 14–54–803.

## Mayoral Discretion Under Section 20–17–903

For his final argument, Brock contends that, due to the Health Department's

recommended approval of his permit application, Townsell is without discretion to refuse the permit under *Assembly of God Church, Lambert v. Ford, supra.* In that case, this court affirmed the circuit court's ruling ordering a county judge to issue a permit in accordance with the predecessor to section 20–17–903. 255 Ark. at 133–34, 499 S.W.2d at 273–74. We held that "the county judge ha[d] no discretion under the statute to refuse a permit once the State Health Department ha[d] given its approval." *Id.* at 134, 499 S.W.2d at 274.

We decline to address this argument, because a holding on this point would not affect the outcome of the instant appeal. As we have indicated, the authority of the Department of Health under section 20–17–903 is subject to the land-use ordinances enacted pursuant to section 14–56–416. The Conway City Council, in accordance with Ordinance 0–94–54, has declined to grant Brock a conditional-use permit for the construction of a cemetery on his property. Brock has failed to appeal that decision to the circuit court. Therefore, even if Townsell had no discretion under section 20–17–903 to refuse a permit once the Health Department gave its approval, such a permit would still be subject to Conway's zoning ordinances. Thus, regardless of the outcome under section 20–17–903, the Conway City Council's denial of Brock's request for a conditional-use permit precludes the establishment of a cemetery on his property.

For the reasons stated above, we affirm the circuit court's grant of summary judgment in favor of Townsell.

Affirmed.