2009 Ark. 457

Justin BRYAN;  J & L Construction, Appellants,

v.

CITY OF COTTER;  City of Gassville; Garver, Inc.;  Grubbs, Hoskyn, Barton & Wyatt, Inc., Appellees.

No. 08–811.

Supreme Court of Arkansas.

Oct. 1, 2009.

Davidson Law Firm, Ltd., by: Matthew D. Wells and Charles "Skip" Davidson, Little Rock, for appellant Justin Bryan.

Anderson, Murphy & Hopkins, L.L.P., by: Overton S. Anderson and Mindy D. Pipkin, Little Rock, for appellee Grubbs, Hoskyn, Barton & Wyatt, Inc.

Williams & Anderson PLC, Little Rock, by: David M. Powell, for appellees Garver, Inc., City of Cotter, and City of Gassville.

ANNABELLE CLINTON IMBER, Justice.

This case involves the interpretation of exculpatory clauses in a construction contract and the determination of when the statute of limitations begins to run on a contractor's professional malpractice claim against an engineering firm. Jurisdiction is in this court pursuant to Ark. Sup.Ct. R. 1–2(b)(5).

In 2002, the City of Cotter and the City of Gassville (the Cities) retained the services of Garver, Inc. (Garver), to act as the design and supervision engineer on the expansion of a wastewater treatment facility in Baxter County, Arkansas. Garver contracted with Grubbs, Hoskyn, Barton, & Wyatt, Inc. (GHBW), to conduct soil tests at the proposed construction site. GHBW completed and prepared a report on its findings on September 30, 2001. The soils report became part of the materials disseminated by the Cities in soliciting bids for the construction of the wastewater facility at the proposed site. Appellant Justin Bryan, doing business as J & L Construction (Bryan), was the successful bidder on the project and entered into a contract with the Cities on June 7, 2002. The contract made reference to several documents that were to be considered as part of the agreement, one of which was a "Special Conditions" document. That document included a clause setting forth limitations on liability for information contained in the soils report. It also contained a clause addressing the affirmative duty of a contractor to inspect the proposed site and inform himself about the conditions at the proposed site. Because the project would involve financing through the Arkansas Soil and Water Conservation Commission Revolving Loan Fund, the contract contained a federally mandated "Differing Site Conditions" clause.

Once construction of the water facility began, the contractor encountered dolomite rock. That discovery meant that Bryan would have to use blasting techniques to remove the dolomite rock, as well as a backfill process to compensate for the excavation, both of which were not anticipated or included in the original bid. Bryan requested additional time and compensation for these additional construction methods, but the Cities denied the request.

Bryan filed suit on May 24, 2005, asserting negligence against GHBW and Garver, and breach of contract, breach of warranties, equitable modification of contract, and *quantum meruit* against the Cities. GHBW initially filed a motion to dismiss, claiming that Bryan's complaint was barred by the statute of limitations. After a hearing, the circuit court granted GHBW's motion. Garver then filed a motion to dismiss, asserting that the contract between Bryan and the Cities contained clauses releasing it from any claims for negligence. The court dismissed the claims against Garver by summary judgment.

The Cities also filed a motion for summary judgment, arguing that any claims regarding extra work were waived by the same contractual provisions that Garver relied upon in its earlier motion to dismiss. The circuit court granted partial summary judgment on all claims against the Cities except for one claim arising out of the Cities' denial of Bryan's request to substitute a pump. Bryan's initial appeal was dismissed by the Arkansas Court of Appeals for lack of a final order. *Formal Order*, CA 08–00307, June 4, 2008. Upon the circuit court's entry of a final order dismissing the remaining claim with prejudice, Bryan filed a notice of appeal seeking review of the court's summary-judgment orders of dismissal.

■ The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment. *Brock v. Townsell*, 2009 Ark. 224, 309 S.W.3d 179. A trial court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Id.* The burden of proof shifts to the opposing party once the moving party establishes a *prima facie* entitlement to summary judgment; the opposing party must demonstrate the existence of a material issue of fact. *Id.* After reviewing the undisputed facts, the trial court should deny summary judgment if, under the evidence, reasonable minds might reach different conclusions from the same undisputed facts. *Id.* On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* This review is not limited to the pleadings but also includes the affidavits and other documents filed by the parties. *Id.*

### I. *Statute of Limitations*

■ For his first point on appeal, Bryan contends that the circuit court erred in ruling that Bryan's professional malpractice claim against GHBW was barred by the statute of limitations period. The circuit court determined that the statute of limitations period began to run on September 30, 2001, the date GHBW prepared its soils report. Thus, the statute of limitations had already expired when Bryan filed his complaint on May 24, 2005. Bryan asserts on appeal, as he did below, that the statute of limitations period did not begin to run until June 7, 2002, the date Bryan signed the construction contract with the Cities. In support of this assertion, Bryan posits that the necessary elements for the cause of action were not present before June 7, 2002, because Bryan could not have been injured until the construction contract was signed. Thus, according to Bryan, his malpractice action against GHBW did not accrue until June 7, 2002.

The statute of limitations period for an action based on negligence is three years.

Ark.Code Ann. § 16–56–105 (Repl.2005). In determining when the statute of limitations begins to run in an action for professional malpractice, this court has consistently followed the occurrence rule, meaning that, in the absence of concealment of the wrong, the applicable period begins when the negligent act occurred, not when it was discovered. *Moix–McNutt v. Brown*, 348 Ark. 518, 521, 74 S.W.3d 612, 613 (2002); *Ragar v. Brown*, 332 Ark. 214, 964 S.W.2d 372 (1998); *Chapman v. Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991). The alleged negligent act in the instant case occurred when GHBW prepared the soils report on September 30, 2001.

Notwithstanding this court's consistent refusal to retreat from the occurrence rule, Bryan argues that his cause of action for professional malpractice against GHBW was not complete until he signed the contract and began excavation. He asserts that the errors in the soils report could not have been discovered until he began to excavate. For authority on this point, Bryan cites to our holding in *State v. Diamond Lakes Oil Co.*, 347 Ark. 618, 66 S.W.3d 613 (2002). The *Diamond Lakes* case, however, involved a property owner's action for trespass, not an action for professional malpractice. Thus, Bryan's reliance on that case is misplaced. Likewise, our court's decisions in *Martin v. Arthur*, 339 Ark. 149, 3 S.W.3d 684 (1999) (products-liability action), *McEntire v. Malloy*, 288 Ark. 582, 707 S.W.2d 773 (1986) (action for battery), and the court of appeals's decision in *Shelter Ins. Co. v. Arnold*, 57 Ark. App. 8, 940 S.W.2d 505 (1997) (action for indemnification), are inapposite.

Although this Court has acknowledged that the "discovery rule" and the "date of injury rule" have some appeal in determining when the statute of limitations period begins to run, we have adhered to the "occurrence rule" in professional malpractice actions. Our reasons for doing so are stated succinctly in the *Chapman v. Alexander* case:

> We have made it clear that we are not going to retroactively change our rule and that, if it is to be changed, the change must come from the General Assembly. It would be incongruous for us, rather than the legislature, to now change it. More importantly, the issue is one of statutory construction and, since 1877, we have construed our statute under the "traditional rule." Legislative silence after such a long period gives rise to an arguable inference of acquiescence or passive approval of our construction of the statute.
>
> . . . .
>
> *Many abstractors, accountants, architects, attorneys, and other similar professionals surely have relied on our traditional and longstanding rule.* In doing so, they had no reason to keep records for longer than three (3) years. As a consequence, if we retroactively changed the rule, they might easily have no materials to use in their defense. . . . The General Assembly is best suited to hold hearings on such issues and determine whether a change, if any, should be made and whether it should be made retroactively, prospectively from the date of the change, or prospectively from some future date. . . .

*Chapman*, 307 Ark. at 90–91, 817 S.W.2d at 427 (emphasis added); *see also Ford's Inc. v. Russell Brown & Co.*, 299 Ark. 426, 429, 773 S.W.2d 90, 92 (1989) ("Our decisions have settled this limitation question in professional malpractice actions. . . ."). Based on our well-settled case law, we affirm the circuit court's ruling that Bryan's professional malpractice claim against GHBW was barred by the statute of limitations.

## II. *Interpretation of Exculpatory Clauses*

The contractual provisions at issue, which are set forth in a Special Conditions document that is part of the contract, provide in relevant parts as follows:

SC.26 Test Borings.

*Contactor may rely upon the general accuracy of the test pit or soil boring data contained in the reports* or drawings, *but such reports* and drawings *are not Contract documents. Contractor may not rely upon or make any claim against Owner, Engineer, or Engineer's Consultants with respect to* (1) *the completeness of such reports* and drawings for Contractor's purposes, including, but not limited to, any aspects of the means, methods, techniques, sequences and procedures of construction to be employed by the Contractor and safety precautions and programs incident thereto, (2) *other data, interpretations, opinions and information contained in such reports* or shown or indicated in such drawings, (3) any Contractor interpretation of or conclusion drawn from any data or any such data, interpretations, opinions or information. (Emphasis added.)

SC.7 Knowledge of Conditions

The Contractor states that he has examined all the available records and has made a field examination of the site and right-of-way and that he has informed himself about the character, quality and quantity of surface and subsurface materials and other conditions to be encountered; the quantities in various sections of the work; the character of equipment and facilities needed for the prosecution of the work; the location and suitability of all construction materials; the local labor conditions; and all other matters in connection with the work and services to be performed under this contract.

These two clauses address Bryan's affirmative duty to inform himself about conditions at the site, as well as the extent to which Bryan can rely on the soils report. The threshold question is whether these two provisions are exculpatory clauses that clearly absolve the Garver engineering firm from any liability due to any alleged negligent actions on its part in connection with GHBW's preparation of the soils report.

An exculpatory clause is a provision in a contract that serves to absolve a party in advance for any consequences of its own negligence. *Finagin v. Ark. Dev. Fin. Auth.*, 355 Ark. 440, 139 S.W.3d 797 (2003). Contracts that exempt a party from liability for negligence are not favored by the law. *Plant v. Wilbur*, 345 Ark. 487, 47 S.W.3d 889 (2001). Thus, exculpatory clauses are strictly construed against the party relying on them, and the contract must clearly set out what negligent liability is to be avoided. *Id.* In addition to these two rules of construction, we have stated that we are not restricted to the literal language of the contract but "we will also consider the facts and circumstances surrounding the execution of the release in order to determine the intent of the parties." *Finagin*, 355 Ark. at 455, 139 S.W.3d at 806. Furthermore, in our review of exculpatory clauses, we consider three factors. An exculpatory clause will be enforced "(1) when the party is knowledgeable of the potential liability that is released; (2) when the party is benefitting from the activity which may lead to the potential liability that is released; and (3) when the contract that contains the clause was fairly entered into." *Id.* at 458, 139 S.W.3d at 808.

Under the foregoing authority, we must strictly construe the provisions set forth in sections SC.26 (Test Borings) and SC.7 (Knowledge of Conditions) of the contract.

The first sentence in SC.26 provides that Bryan may rely upon *the general accuracy* of the test pit or soil boring data contained in the reports. The sentence then concludes by stating that the reports are not part of the contract documents. The next sentence states that Bryan may not rely upon the completeness of those reports or other information contained in the reports. We cannot say, as a matter of law, that the language of SC. 26 is clear and unambiguous. The clause provides that the reports are not contract documents, but at the same time it allows the contractor to rely upon the general accuracy of the data contained in the reports. The meaning of the terms "general accuracy" and "completeness" is also not plain and evident. Likewise, we cannot say, as a matter of law, that the language in SC.7 clearly sets forth what Bryan must do to inform himself about the conditions at the site.

Garver maintains that similar contractual disclaimers have been upheld and enforced by courts in other jurisdictions. However, the contractual provisions at issue in those cases are distinguishable. *See Millgard Corp. v. McKee/Mays*, 49 F.3d 1070 (5th Cir.1995) (soils report not a warranty of subsurface conditions; bidder should perform own investigation); *Green Constr. Co. v. Kan. Power & Light Co.*, 1 F.3d 1005 (10th Cir.1993) (no subsequent financial adjustment for differing conditions); *Michels Pipe Line Constr., Inc. v. City of Elgin*, 1998 WL 246476 (N.D.Ill. 1998) (exculpatory clauses and change of conditions clause ambiguous); *Berkel & Co. Contractors, Inc. v. Providence Hosp.*, 454 So.2d 496 (Ala.1984) (no warranty regarding adequacy or content of soils report; bidder to obtain, at its own expense, information necessary to determine existing site and subsoil conditions); *Empire Paving, Inc. v. City of Milford*, 57 Conn. App. 261, 747 A.2d 1063 (2000) (no warranty for accuracy of information relating to subsurface conditions); *H & S Corp. v.*

*U.S. Fid. & Guar. Co.*, 667 So.2d 393 (Fla. App.1995) (bidder responsible for obtaining its own geotechnical assessment); *Jahncke Serv. Inc. v. Dep't of Transp.*, 172 Ga.App. 215, 322 S.E.2d 505 (1984) (no warranty for accuracy of soils report); *Bilotta Constr. Corp. v. Village of Mamaroneck*, 604 N.Y.S.2d 966, 199 A.D.2d 230 (1993) (data concerning elevations is approximate, with no guarantee of accuracy); *Air Cooling & Energy, Inc. v. Midwestern Constr. Co. of Mo., Inc.*, 602 S.W.2d 926 (Mo.App.1980) (engineer and owner not responsible for the completeness or accuracy of the data furnished; bidder expected to obtain additional data); *Mooney's Inc. v. S.D. Dep't of Transp.*, 482 N.W.2d 43 (S.D. 1992) ("THIS IS NOT A SPECIAL PROVISION FOR INFORMATION ONLY"); *Frontier Founds., Inc. v. Layton Constr. Co., Inc.*, 818 P.2d 1040 (Utah App.1991) (soils report is not a warranty of subsurface conditions; the contractor shall make every effort to familiarize himself with the prevailing work conditions).

Based upon our summary-judgment standard of review, we conclude that material issues of fact exist regarding the interpretation of the exculpatory clauses set forth in SC. 26 and SC.7 of the contract. Thus, the circuit court erred in granting summary judgment in favor of Garver.

### III. *Interpretation of Differing Sites Conditions Clause*

Bryan contends that the federally mandated "Differing Sites Conditions" clause contained in the Supplemental Conditions supersedes any conflicting clauses in the contract. He relies upon a provision which provides that "the Supplemental conditions supersede any conflicting provisions of the Contract Documents." The Cities counter that this clause is not applicable because the soil conditions encountered

were not "materially different" from those shown in the soils report.

The relevant portions of the clause provide as follows:

**Differing Site Conditions.** The contractor shall promptly, and before such conditions are disturbed, notify the owner in writing of:

A. Subsurface or latent physical conditions at the site *differing materially* from those *indicated in this agreement,* or

B. Unknown physical conditions at the site, of an unusual nature, *differing materially* from those ordinarily encountered and generally recognized as inherent in work of the character *provided for in this agreement.*

The Owner shall promptly investigate the conditions and if found that conditions materially differ, the Owner will cause and increase or decrease in the Contractor's cost or the time required to perform any part of the work under this agreement·as applicable.

(Emphasis added.)

In view of the material issues of fact that exist regarding the interpretation of the exculpatory clauses set forth in SC. 26 and SC. 7 of the contract, we must also conclude that material issues of fact exist regarding (a) whether the conditions at the site materially differed from those indicated in the contract and (b) whether there were unusual conditions at the site that differed materially from those ordinarily encountered. Accordingly, the circuit court erred in granting summary judgment in favor of the Cities.

Affirmed in part; reversed and remanded in part.