Cite as 2021 Ark. 7

# SUPREME COURT OF ARKANSAS

No. CV-20-216

|  |  |
|---|---|
| | **Opinion Delivered:** January 28, 2021 |
| CONVENT CORPORATION<br>APPELLANT | |
| V. | APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT,<br>TWELFTH DIVISION<br>[NO. 60CV-13-1398] |
| CITY OF NORTH LITTLE ROCK,<br>ARKANSAS, A MUNICIPAL<br>CORPORATION; JOE SMITH,<br>MAYOR, INDIVIDUALLY AND IN<br>HIS OFFICIAL CAPACITY; CITY<br>COUNCIL MEMBERS DEBI ROSS,<br>BETH WHITE, LINDA ROBINSON,<br>MAURICE TAYLOR, STEVE<br>BAXTER, BRUCE FOUTCH,<br>MURRY WITCHER, AND CHARLIE<br>HIGHT, EACH INDIVIDUALLY AND<br>IN HIS OR HER OFFICIAL<br>CAPACITY; TOM WADLEY,<br>DIRECTOR, CODE ENFORCEMENT<br>DIVISION, INDIVIDUALLY AND IN<br>HIS OFFICIAL CAPACITY; AND<br>FELICIA MCHENRY, CODE<br>ENFORCEMENT OFFICER,<br>INDIVIDUALLY AND IN HER<br>OFFICIAL CAPACITY<br>APPELLEES | HONORABLE ALICE S. GRAY,<br>JUDGE<br><br><br>AFFIRMED IN PART; REVERSED<br>AND REMANDED IN PART;<br>DISMISSED AS MOOT IN PART. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant Convent Corporation ("Convent") appeals from the Pulaski County

Circuit Court's order granting summary judgment in favor of appellees City of North Little

Rock, Arkansas, a Municipal Corporation; Joe Smith, Mayor (the "Mayor"), individually

and in his official capacity; City Council Members Debi Ross, Beth White, Linda Robinson, Maurice Taylor, Steve Baxter, Bruce Foutch, Murry Witcher, and Charlie Hight, each individually and in his or her official capacity ("City Council"); Tom Wadley, Director, Code Enforcement Division, individually and in his official capacity; and Felicia McHenry, Code Enforcement Officer, individually and in her official capacity (collectively, "the City"); and dismissing Convent's suit, which challenged the City's decision to condemn certain property and sought declaratory and injunctive relief. For reversal, Convent argues that (1) the City Council's condemnation decision was not supported by substantial evidence and was arbitrary and capricious; (2) the circuit court erred by dismissing Convent's constitutional claims, claims pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, and common-law claim of trespass for failure to exhaust its administrative remedies; (3) the City's condemnation procedure violates due process; (4) the City's condemnation ordinances contain terms that are unconstitutionally vague and that provide public officials with too much discretion; (5) the City's resolution condemning its property is an unlawful bill of attainder; and (6) the circuit court erred by denying Convent's renewed motion to strike the City's amended answer and affirmative defenses. We affirm in part, reverse and remand in part, and dismiss as moot in part.

This case involves condemnation proceedings instituted by the City on property owned by Convent at 6615 Highway 70 in North Little Rock. The structure at issue had been operated as a nightclub for many years but had been vacant since August 2011. On November 14, 2012, the building was "red-tagged" by McHenry, a code-enforcement officer, serving as notice to the owners and occupants that the structure was deemed a public

2

nuisance in violation of articles 1 and 8 of the City's Nuisance Abatement and Property Maintenance Code. In addition to posting notice on the premises, McHenry also mailed to Convent the notice of public nuisance, which stated that the building was "an unsafe and vacant structure that is not fit for human habitation." This letter notified Convent that the property would be considered for condemnation due to its current condition and that a public hearing would be conducted by the City Council on February 25, 2013. It further indicated that Convent was given seven days' notice to remove, abate, or eliminate the nuisance or to contact the code enforcement department to discuss a plan of abatement.

After receiving no response from Convent, McHenry obtained a search warrant to inspect the interior of the property. In a January 11, 2013 letter to the Mayor and the City Council, McHenry indicated that her inspection revealed numerous violations and that the structure had also sustained some fire damage. She stated that she and other personnel had twice met with Rich Livdahl, who indicated that he was the representative of Convent even though he was not listed as an owner of record. According to McHenry, they advised him on what would be required to bring the building into compliance with the City code. In the second meeting, Livdahl informed them that Convent would arrange for someone to clean out the building but that there were no plans to rehabilitate it. Livdahl still had no paperwork demonstrating his authority to represent Convent. McHenry concluded her letter by stating that the code enforcement department recommended that the structure be considered for condemnation.

After noticing on the City Council agenda for the February 25, 2013 meeting that it was allotted only three minutes to present its case against the proposed condemnation,

Convent filed a motion asking for a full hearing on the issue and arguing that the City's hearing schedule violated Convent's due-process rights under the Arkansas and United States Constitutions. The City did not act on this motion.

At the hearing, counsel for Convent stated that the property's current condition resulted from vandalism and that the owners were not aware of the damage until the condemnation notice. He indicated that people had broken into the building, ripped out copper wiring, and fallen through the ceiling. However, he stated that the damage was mainly cosmetic and that the owners wished to conduct repairs. Counsel asked the City Council to postpone the vote on condemnation and allow the owners to come up with a plan to rehabilitate the structure. He expressed concern that Convent would only have thirty days to appeal if the property was ordered to be condemned. The Mayor stated that Convent would have to negotiate with the City attorneys and code enforcement on a rehabilitation plan, as well as post a bond, but that any repairs would not have to be completed within thirty days of condemnation. A council member also noted that Convent could pursue a timely appeal but at the same time work with code enforcement to abate the nuisance. Counsel indicated that Convent had cleaned out the building but had not conducted any repairs because it was prevented from obtaining a permit pending the condemnation proceeding. Other council members questioned why Convent had waited until the condemnation notice to repair the property and stated that the building had been in that condition for quite a while. Pictures of the exterior and interior of the building were shown, and council members noted that it appeared a fire had occurred in part of the structure. Counsel again requested a full hearing, but the Mayor stated that the City Council was not

there "to hear cases" and that was "what the court system was for." Counsel was allowed to submit a brief, but the City Council ultimately voted to condemn the structure.

The resolution condemning the property stated that "the condition of the property constitutes a serious fire and health hazard" and that "unless immediate actions are taken to remedy this situation by removing, razing, or abating the nuisance, there is a great likelihood that the surrounding property may be destroyed by fire." It further indicated that the structure was "a breeding place for rats, rodents and other dangerous germ carriers of diseases." The resolution declared that the structure was vacant, run down, dilapidated, unsafe, unsightly, dangerous, obnoxious, unsanitary, a fire hazard, a menace to abutting properties, and not fit for human habitation, and that because of such conditions, it was condemned as a public nuisance. Convent was directed to raze or otherwise abate the nuisance within thirty days; if this was not completed within ninety days, the resolution authorized the City to remove the structure and to fine Convent $50 for each day after ninety days that the nuisance was not abated.

On March 27, 2013, Convent filed a complaint in the Pulaski County Circuit Court, appealing the City's decision to condemn its property under Rule 9(f) of the Arkansas District Court Rules. Convent also brought claims pursuant to 42 U.S.C. §§ 1983, 1985(3), 1986, and 1988 and the Arkansas Civil Rights Act, Ark. Code Ann. §§ 16-123-101 et seq. (Repl. 2016 & Supp. 2019), for violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and article 2, sections 15 and 22 of the Arkansas Constitution, as well as a common-law claim of trespass. Convent sought a declaratory judgment that the City's ordinance related to condemnation proceedings (chapter 8, article

5

1, section 7 of the City's code) is unconstitutional. Further, Convent requested injunctive relief prohibiting the City from destroying or interfering with its use of the property or from condemning additional properties or taking any action to file or collect liens for the demolition of properties. The complaint also requested that the circuit court certify the case as a class action. Convent requested actual, compensatory, and punitive damages for the alleged violations of its constitutional rights and for the alleged trespass.

Following the City's removal of the action to federal district court, the case was returned to the circuit court on February 20, 2014. On May 17, 2014, Convent filed a motion for judgment on the pleadings or, in the alternative, a motion for summary judgment, arguing that the City had failed to timely file an answer following the return from federal court and that it was entitled to summary judgment on its claims. The City responded to the motion, asserting that it had filed an answer and accompanying motion to dismiss in federal court. The City also argued that Convent's motion was premature because it had not exhausted its administrative remedies.

On June 18, 2014, the City filed an amended answer denying the allegations in Convent's complaint and asserting numerous affirmative defenses. Convent filed a motion to strike the amended answer and affirmative defenses as untimely. On September 1, 2014, Convent filed its motion for class certification seeking to certify as a class all individuals who own property within the City and whose property had been condemned by the City Council since March 27, 2008.

The circuit court entered an order on July 9, 2015, denying Convent's motion for class certification because Convent did not present any evidence in support of the motion.

The court also dismissed without prejudice Convent's constitutional and civil-rights claims and common-law claim of trespass on the basis that it had not yet exhausted its administrative remedies by way of its Rule 9 appeal. Finally, the circuit court denied Convent's motion for judgment on the pleadings or, in the alternative, motion for summary judgment, because genuine issues of material fact remained. Convent filed an interlocutory appeal from this order. This court reversed and remanded the appeal of the denial of class certification, holding that the circuit court abused its discretion by not reviewing the evidence in the record to determine whether the class-certification motion should be granted or denied. *Convent Corp. v. City of N. Little Rock*, 2016 Ark. 212, 492 S.W.3d 498 ("*Convent I*"). We did not address Convent's appeal of the remaining rulings because they were not reviewable on an interlocutory basis. *Id*.

Upon remand, Convent filed a motion on September 30, 2016, for judgment on the record, for declaratory judgment, and to reinstate claims. Convent asserted that the City's condemnation decision should be overturned because it was based on unconstitutional procedures, it was not based on substantial evidence in the record of the administrative proceedings, and it was arbitrary and capricious. Convent also sought a declaratory judgment that the City's ordinance and procedures related to condemnation proceedings are unconstitutional. Further, Convent requested that its claims that were dismissed for failure to exhaust be reinstated upon the circuit court's ruling on its Rule 9 appeal and its declaratory-judgment action. In response, the City continued to argue that Convent's requests for declaratory judgment and to reinstate claims were premature because it had not yet exhausted its Rule 9 appeal.

7

Convent moved to nonsuit its request for declaratory judgment, and an order dismissing this claim without prejudice was filed on May 11, 2017. That same day, the circuit court entered an order finding that substantial evidence supported the City Council's determination that Convent's property was a nuisance and that the decision was not arbitrary and capricious. The court therefore concluded that the underlying appeal had been resolved. However, the circuit court stated that "it found no reason to reconsider its previous dismissal of Plaintiff's associated constitutional and class claims, and therefore, Plaintiff's motion to reinstate claims is denied." The court reserved for a later time its decision on the City's stated intention to request civil penalties in the amount of $50 per day as authorized by statute and the resolution condemning the property. Finally, the court denied Convent's request for a stay pending appeal unless it could present a suitable bond that the City was willing to accept.

Convent filed a second notice of appeal from the May 11, 2017 order. However, this court dismissed the appeal because it was not from a final order. *Convent Corp. v. City of N. Little Rock*, 2018 Ark. 45 ("*Convent II*"). We noted that the issue of civil penalties remained to be decided and that the voluntary dismissal of Convent's declaratory-judgment claim left it free to be refiled, thereby creating the possibility of piecemeal appeals. *Id.*

Following our dismissal, Convent filed an amended and reinstated petition for declaratory judgment on July 30, 2018. Convent again sought a declaration that the City's ordinance related to condemnation proceedings was unconstitutional, and it requested an injunction preventing the City from destroying any property that had been condemned pursuant to that ordinance, condemning any additional property or otherwise enforcing

8

article 1, section 7 of the City's code, or taking any action to file or collect liens for the demolition of properties. Convent alleged that the City's ordinance and procedures failed to provide due process and that they also constituted an unconstitutional bill of attainder.

The City filed an answer denying the allegations and a motion to dismiss or for summary judgment, arguing that Convent's petition was time-barred because it had not been filed within one year of Convent's previous nonsuit. Convent responded by asserting that the one-year savings statute is applicable only when the original statute of limitations has expired and that the three-year limitations period for its underlying claims had not expired. Convent also filed a renewed motion to strike the City's June 18, 2014 amended answer and associated affirmative defenses as untimely. The circuit court entered orders denying both the City's motion to dismiss and Convent's renewed motion to strike. With regard to the motion to strike, the court stated that the City's timely answer to Convent's amended and reinstated petition for declaratory judgment rendered the motion moot.

On June 26, 2019, the City filed a motion for summary judgment asserting that it was entitled to judgment as a matter of law on Convent's petition. In addition to defending the constitutionality of its ordinance and procedures, the City claimed that Convent lacked standing to challenge the City Council's decision because Convent was not the owner of the property during the condemnation proceedings. According to the City, Convent failed to pay property taxes for the years 2010–2013 and did not reacquire title to the property until it paid the delinquent taxes in February 2015.

Convent filed a response to the City's motion and a countermotion for summary judgment on July 17, 2019. In addition to the allegations in its petition that the City's

9

ordinance and procedures did not provide due process and resulted in an unconstitutional bill of attainder, Convent also argued that the City's ordinance was unconstitutionally vague because it provided city officials with too much discretion. Convent further asserted that it had standing to bring its facial challenge because it had a legally cognizable interest in the property during the time period in question. In addition, Convent contended that waiver and estoppel barred the City from raising this issue.

Following a hearing on the cross-motions, the circuit court entered an order on December 11, 2019, granting the City's motion for summary judgment and denying Convent's countermotion. The court therefore dismissed with prejudice Convent's amended and reinstated petition for declaratory judgment. Convent filed a timely notice of appeal from the order and specified that it was also appealing the circuit court's June 2019 order denying its renewed motion to strike, the May 2017 order, and the July 2015 order.

Although Convent lists fifteen points on appeal in its brief, these can be consolidated into six distinct arguments: (1) the City Council's condemnation decision was not supported by substantial evidence and was arbitrary and capricious; (2) the circuit court erred by dismissing Convent's constitutional claims, claims pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, and common-law claim of trespass for failure to exhaust its administrative remedies; (3) the City's condemnation procedure violates due process; (4) the City's condemnation ordinances contain terms that are unconstitutionally vague and that provide public officials with too much discretion; (5) the City's resolution condemning its property is an unlawful bill of attainder; and (6) the circuit court erred by denying Convent's renewed motion to strike the City's amended answer and affirmative defenses.

10

I. *Standing*

As a threshold matter, the City contends that we should not address the issues raised in Convent's appeal due to its lack of standing to challenge the condemnation action. The City asserts that because Convent failed to pay taxes for the years 2010–2013 and did not redeem the property until 2015, Convent did not hold title to the property at the time of the condemnation proceedings.

We disagree that Convent lacked standing to bring its action. Not only was Convent named and recognized as the property owner by the City in its condemnation proceeding and resolution, Convent also retained the right to redeem the property during the relevant time period by paying the delinquent taxes, which it ultimately did in February 2015. As Convent argues, the right to redeem is a legally cognizable interest. *See* Ark. Code Ann. § 26-37-301 (Supp. 2019) (requiring notice by the Commissioner of State Lands of the owner's right to redeem and defining "owner" as one holding title to or an interest in tax-delinquent land at the time of certification to the Commissioner). Further, we have held that a party has standing to appeal if an order has impaired his or her economic interests. *Forrest Constr., Inc. v. Milam*, 345 Ark. 1, 43 S.W.3d 140 (2001). Although the City cites *Talley v. City of North Little Rock*, 2009 Ark. 601, 381 S.W.3d 753, the facts in that case are distinguishable, as the property had been sold to another party at the time of the condemnation decision, and the appellant no longer had a right to redeem the property. Accordingly, we proceed in deciding the merits of Convent's appeal.

## II. *Administrative Appeal of Condemnation Decision*

Convent first argues that the circuit court erred by upholding the City's condemnation decision because it was not supported by substantial evidence and was arbitrary and capricious. Convent asserts that the administrative record from the City Council proceeding does not contain any factual findings to support the condemnation and demolition of its property.

Because we determine that this issue is moot, we do not address it. We have consistently held that we will not review issues that are moot because to do so would be to render an advisory opinion. *See, e.g.*, *Keep Our Dollars in Independence Cnty. v. Mitchell*, 2017 Ark. 154, 518 S.W.3d 64; *Lott v. Langley*, 2013 Ark. 247; *Ark. Dep't of Corr. v. Williams*, 2009 Ark. 523, 357 S.W.3d 867. A case generally becomes moot when any judgment rendered would have no practical legal effect on a then-existing legal controversy. *Mitchell*, *supra*. We have recognized two exceptions to the mootness doctrine for (1) issues that are capable of repetition yet evade review, and (2) issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. *Id.*

In Convent's Rule 9 appeal of the condemnation decision, it requested only that the City Council's resolution ordering its property condemned as a nuisance be overturned. However, both parties state in their respective briefs that the structure at issue has already been razed by the City. Furthermore, the record does not indicate that Convent requested a stay of the circuit court's final order or that it attempted to post a bond to prevent destruction of the property. Thus, any decision by this court on Convent's appeal from the administrative decision would have no practical legal effect. Convent requested declaratory

12

relief and damages only with regard to its constitutional, civil-rights, and trespass claims, and the City withdrew its attempt to enforce payment of any penalties associated with the condemnation order. In addition, neither of the exceptions to mootness apply here because the condemnation decision related only to the condition of the specific property at issue and is not likely to recur. We therefore decline to address the merits of Convent's administrative appeal and dismiss it as moot.

III. *Dismissal of Claims for Failure to Exhaust Administrative Remedies*

In its next point on appeal, Convent argues that the circuit court erred by dismissing its constitutional claims, civil-rights claims under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, and common-law claim of trespass on the basis that Convent had failed to exhaust its administrative remedies. Convent contends that its Rule 9 appeal to circuit court is not an administrative remedy that must be exhausted, and further, that exhaustion is not required prior to bringing its civil-rights claims. Convent also argues that if the Rule 9 appeal in circuit court is considered an extension of the City's administrative procedures and not a judicial remedy, this would violate the separation-of-powers doctrine in article 4, section 2 of the Arkansas Constitution.

The City asserts that this issue is moot because after the circuit court rejected Convent's appeal of the condemnation decision, the court then considered and ruled on Convent's amended and reinstated petition for declaratory judgment, which raised only a facial challenge to the City's condemnation ordinance and procedures. The City contends that Convent nonsuited its previous petition and chose not to bring its other constitutional

13

or civil-rights claims in its amended petition; thus, there is no longer a justiciable controversy regarding Convent's failure-to-exhaust argument.

We disagree that this issue is moot. Not only did the circuit court dismiss all of Convent's claims except the Rule 9 appeal in its July 2015 order, it also declined to reinstate these claims in its 2017 order deciding the administrative appeal, despite the fact that Convent filed a motion requesting it to do so. The court did not rule on the merits of these claims and instead stated in response to Convent's motion that it "finds no reason to reconsider its previous dismissal." The declaratory-judgment claim that Convent voluntarily dismissed focused on its facial challenge. The circuit court never considered the merits of the remaining claims that were dismissed for failure to exhaust, with the exception of the facial due-process claim, nor does the record reflect that Convent voluntarily dismissed or otherwise abandoned them. Accordingly, a justiciable controversy remains regarding these claims, and Convent's failure-to-exhaust argument is not moot.

As we noted in Convent's first appeal, the City does not describe which administrative remedies Convent could have pursued other than appealing from the City Council's condemnation decision. *Convent I*, 2016 Ark. 212, at 7 n.2, 492 S.W.3d at 502 n.2. While we have held that an action challenging a municipality's decision should be dismissed for failure to exhaust when there was no appeal from that decision pursuant to Rule 9, the City has cited no case in which dismissal is required when those claims are brought in conjunction with a timely and properly perfected Rule 9 appeal. *See, e.g.*, *Talley v. City of N. Little Rock*, 2009 Ark. 601, 381 S.W.3d 753 (affirming dismissal because the appellant failed to appeal any of the city council's decisions and instead attempted to

14

collaterally attack the decisions); *Ingram v. City of Pine Bluff*, 355 Ark. 129, 133 S.W.3d 382 (2003) (affirming dismissal of claims that were not timely appealed from decision of municipality). The case cited in the circuit court's order dismissing the associated claims, *Old Republic Surety Co. v. McGhee*, 360 Ark. 562, 203 S.W.3d 94 (2005), is distinguishable because in that case, a separate appeal from an administrative decision was still pending when the appellee brought her similar claim directly in circuit court. We therefore held that the appellee had failed to prove it would be futile to exhaust her administrative remedies. *Id*. Accordingly, Convent is correct that the circuit court erred by dismissing Convent's constitutional, civil-rights, and trespass claims solely on the basis of its failure to exhaust its administrative remedies. While it may have been appropriate for the circuit court to first rule on Convent's administrative appeal before proceeding to the additional claims, the court denied without explanation Convent's motion to reinstate these claims once the Rule 9 appeal had been decided. We therefore reverse and remand for further proceedings on Convent's constitutional, civil-rights, and trespass claims, with the exception of its facial challenge, which was ruled upon and is addressed below. Accordingly, it is unnecessary to address Convent's separation-of-powers argument.

IV. *Whether the City's Condemnation Ordinance Violates Due Process*

For its third argument, Convent contends that the City's condemnation ordinance violates due process because it fails to provide adequate notice, a meaningful hearing before an unbiased decision maker, or an opportunity to repair the property prior to seizure and condemnation of the property. In its brief, Convent focuses primarily on whether the City's procedures, as applied in this case, violated Convent's due-process rights. However, as noted

15

above, the circuit court dismissed and thereafter declined to rule on Convent's as-applied claim, and we reverse and remand for further proceedings on this issue. Thus, we address Convent's arguments related only to its facial challenge. The circuit court granted summary judgment in the City's favor on this claim.

Ordinarily, on appeal from a summary-judgment disposition, we view the evidence in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Abraham v. Beck*, 2015 Ark. 80, 456 S.W.3d 744. However, when the parties agree on the facts, we simply determine whether the appellees were entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgment, as in this case, they essentially agree that there are no material facts remaining and that summary judgment is an appropriate means of resolving the case. *Id.* As to issues of law presented, our review is de novo. *Id.*

We review municipal ordinances in the same manner as statutes. *Vanderpool v. Pace*, 351 Ark. 630, 97 S.W.3d 404 (2003). Statutes are presumed constitutional, and the party challenging the statute has the burden to prove otherwise. *Martin v. Kohls*, 2014 Ark. 427, 444 S.W.3d 844. Under the standard applicable to facial challenges, the proponent must show that no set of circumstances exists under which the act is constitutional. *Id.*

Convent asserts that the City's condemnation ordinance should be subjected to a strict-scrutiny analysis, arguing that private property cannot be taken under the Arkansas Constitution in the absence of a compelling government interest and a demonstration that the least restrictive method available has been utilized to accomplish that interest. The City disagrees and claims that the rational-basis standard applies. However, those standards are

pertinent to a constitutional challenge based on an equal-protection-type argument and are therefore inapplicable here. *Luebbers v. Money Store, Inc.*, 344 Ark. 232, 40 S.W.3d 745 (2001).

The Fifth Amendment to the United States Constitution and article 2, section 21 of the Arkansas Constitution provide that no person shall be deprived of property without due process of law. In *Tsann Kuen Enterprises Co. v. Campbell*, 355 Ark. 110, 119–20, 129 S.W.3d 822, 827–28 (2003), we discussed the requirements of due process:

> Due process requires at a minimum that a person be given notice and a reasonable opportunity for a hearing before he is deprived of property by state action. *Owings v. Economic & Med. Servs.*, 302 Ark. 475, 790 S.W.2d 438 (1990). In that regard, the concept of due process requires neither an inflexible procedure universally applicable to every situation nor a technical concept with a fixed content unrelated to time, place, and circumstance. *See South Central Dist., Pentecostal Church v. Bruce-Rogers*, 269 Ark. 130, 599 S.W.2d 702 (1980). Instead, what process must be afforded is determined by context, dependent upon the nature of the matter or interest involved. *Id.*
>
> The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319 (1976). The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer great loss." *See Goldberg v. Kelly*, 397 U.S. 254 (1970). It depends upon whether the interest in avoiding that loss outweighs the governmental interest in summary adjudication. *Id.* Thus, determining what process is due involves the consideration of three factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

(quoting *State of Washington v. Thompson*, 339 Ark. 417, 425–26, 6 S.W.3d 82, 87 (1999)). In order to satisfy due process, notice "must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them

an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Section 7 of Chapter 8 of the City's Nuisance Abatement and Property Maintenance Code sets forth the procedures for condemnation of property. Subsection 1.7.3, "Notices," states that "[t]he owner of the structure will be provided notice of any proposed condemnation action no less than ten (10) calendar days prior to consideration by City Council." Notice must be provided by the method described in subsection 1.6.2, which states that administrative notices may be issued by posting on the property and by personal service, regular or certified mail, or if the identity or whereabouts of the owner is unknown, by publication in the newspaper for two consecutive weeks. Subsection 1.6.1 also states that notice of violations shall include a description of the violation(s), rights of appeal under subsection 1.9, and a statement that citations may be issued and fines assessed in addition to any other administrative remedy imposed by the City.

Subsection 1.7.1 provides that, following notice of a proposed condemnation, the City Council may condemn structures "through the passage of a resolution, after a public hearing" that must include a description of the structures, the owner or owners of the structures, and findings that the structures are unfit for human occupancy or are otherwise detrimental to the life, property or safety of the public. After a structure has been condemned, notice of condemnation is required to be mailed to the owner. Subsection 1.7.3.2. Subsection 1.7.4 authorizes the destruction and removal of condemned structures after the expiration of thirty days following the receipt of notice. The owner may only repair or refurbish a condemned structure with an agreement approved by City Council that

18

guarantees repairs will be done in a proper and timely fashion. Subsection 1.7.4.1. With regard to appeals, subsection 1.9.1 states that condemnations heard in City Council or a court of law may be appealed in the manner provided by law for those particular actions.

Under the due-process standards set forth above, Convent has failed to meet its burden of showing that the City's condemnation ordinance and procedures are facially unconstitutional. The City's ordinance provides for adequate notice prior to condemnation, as well as a public hearing. The ordinance also includes information on how to appeal a condemnation decision. Convent's arguments on appeal focus mainly on the City's alleged failure to provide proper notice and/or a meaningful opportunity to be heard in this particular case; thus, they relate only to its as-applied claim. Convent has not demonstrated that there is no set of circumstances under which these code provisions can be applied constitutionally. *Martin*, *supra*.

Although Convent contends that the ordinance does not include procedures by which an owner can rehabilitate a structure prior to a condemnation resolution, it does not expressly prohibit a precondemnation rehabilitation plan either. Again, Convent's assertions with regard to the City's actions in this case are not relevant to its facial challenge. Furthermore, we have not required that a property owner be given an opportunity to rehabilitate a structure following condemnation. We have instead held that "[w]here a property owner is given written notice to abate a hazard on his property and has been given an opportunity to appear before the proper municipal body considering condemnation of the property, no due process violation occurs when the municipality abates the nuisance pursuant to the condemnation notice." *Ingram*, 355 Ark. at 136, 133 S.W.3d at 386 (quoting

*Samuels v. Meriwether*, 94 F.3d 1163, 1166–67 (8th Cir. 1996)). Convent's brief assertions that the City's procedures effectively allow a property to be "seized" prior to a hearing and that the City Council cannot be a neutral decision maker are not supported by citation to convincing authority and are not persuasive. *See Samuels*, *supra* (finding that notice of condemnation and a hearing before the board of directors of the City of Hope satisfied due-process requirements and that an abatement carried out in accordance with procedural due process is reasonable in the context of a Fourth Amendment claim in the absence of any factors that outweigh the governmental interests). We therefore affirm the grant of summary judgment to the City on Convent's facial due-process claim.

V. *Whether the City's Ordinance is Unconstitutionally Vague*

Convent next argues that the City's ordinance contains important and material terms that are undefined and that are unconstitutionally vague. Convent specifically points to the phrases "unfit for human habitation," "fit for human occupancy," and "detrimental to the life, property, or safety of the public." In addition, Convent asserts that the code is vague with regard to the notice provisions in subsection 1.7.3 of the ordinance. Convent contends that this vague language provides the City with too much discretion and that it invites arbitrary enforcement.

As the City argued below, however, Convent raised its vagueness argument for the first time in its motion for summary judgment. It did not include this claim in its original complaint or in its amended and reinstated petition for declaratory judgment, even within the context of its due-process argument. We have held that it would be erroneous for a circuit court, on a motion for summary judgment, to consider any issues raised for the first

20

time in a party's briefs or exhibits. *Douglas Cos., Inc. v. Walther*, 2020 Ark. 365, 609 S.W.3d 397. Thus, the circuit court did not err in granting summary judgment on this claim.

VI. *Whether the City's Ordinance and Resolution Result in Bills of Attainder*

Convent also argues that the City's ordinance results in bills of attainder and that the specific resolution regarding its property is an unconstitutional bill of attainder. This claim was raised in Convent's amended petition, although it was rejected by the circuit court in its order granting summary judgment to the City. Article I, section 10 of the United States Constitution provides that no state shall pass any "Bill of Attainder." The Supreme Court has described a bill of attainder as a legislative act that applies "either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." *United States v. Lovett*, 328 U.S. 303, 315 (1946).

Convent argues that the City's code permits the City Council, a legislative body, to inflict punishment in the absence of any judicial proceedings by passing condemnation resolutions directed at the property owner and that this is exactly what the Bill of Attainder Clause was intended to prohibit. As the City responds, however, the condemnation ordinance does not legislatively punish a named individual or an easily ascertainable group. Moreover, the City Council's resolution condemning Convent's property was not a legislative act but an administrative one. *See King's Ranch of Jonesboro, Inc. v. City of Jonesboro*, 2011 Ark. 123 (stating the test for determining what is legislative and what is administrative, or quasi-judicial, is whether the act is making a new law or executing one already in existence). The circuit court did not err by granting summary judgment to the City on this claim.

21

VII. *The Denial of Convent's Renewed Motion to Strike*

In its final point on appeal, Convent contends that the circuit court erred by denying Convent's renewed motion to strike the City's amended answer and affirmative defenses. We review the denial of a motion to strike under an abuse-of-discretion standard. *Looney v. Blair*, 2010 Ark. 479. An abuse of discretion occurs when the circuit court exercises its discretion thoughtlessly and without due consideration. *Id.*

After this case was remanded from federal district court in February 2014, Convent filed a motion for judgment on the pleadings or for summary judgment in May 2014. The City filed a timely response to this motion and attached the answer it had filed in federal court. The City then filed an amended answer on June 18, 2014. Convent filed a motion to strike, which was not ruled on prior to the circuit court's dismissal of Convent's constitutional and civil-rights claims, and later filed a renewed motion to strike. The circuit court denied this motion on the basis of mootness, finding that the City had filed a timely answer to Convent's amended and reinstated petition for declaratory judgment.

Convent continues to argue that the City's amended answer, filed more than thirty days after the case was remanded from federal court, was untimely under Arkansas Rule of Civil Procedure 12(a)(3). While the circuit court denied the renewed motion to strike as moot, Convent asserts that the City's answer to its amended petition only answered the claims raised therein and that the City never filed a timely answer to the claims that were dismissed.

Rule 12(a)(3) states that when a case is removed to federal court and subsequently remanded, any adverse party shall have thirty days from the receipt of notice of remand to

22

file an answer or other motion permitted under the rule. The City contends, however, that it was not required to refile the answer it had filed in federal court pursuant to Arkansas Rule of Civil Procedure 55(f), which states that no judgment by default shall be entered against a party in an action removed to federal court and subsequently remanded if that party filed an answer or a motion permitted by Rule 12 in federal court during removal. The comments to Rule 12(a)(3) and Rule 55(f) both indicate that a party does not have to refile an answer within thirty days to avoid a default judgment if the party filed an answer or a Rule 12 motion in federal court. *See* Ark. R. Civ. P. 12(a)(3) & 55(f) reporter's notes. Convent argued below that the City's failure to timely refile its answer in state court may have prevented a default judgment under these rules but that the answer was still subject to being stricken as untimely.

Even assuming that Convent is correct that the City was still required to file an answer within thirty days of notice of remand from federal court, it was within the circuit court's discretion to grant the motion to strike. Given that the City filed an answer in federal court and then filed an amended answer, albeit outside the thirty-day time period, to the specific claims raised in state court, Convent has not demonstrated an abuse of discretion by the circuit court in declining to grant the renewed motion to strike. We therefore affirm on this point as well.

Affirmed in part; reversed and remanded in part; dismissed as moot in part.

Webb, J., concurs.

Wood, J., dissents.

23

**BARBARA W. WEBB, Justice, concurring.** I agree with the majority's disposition of this case. I write separately only to correct a misstatement of the law in the majority's discussion of Convent's assertion that we should subject the City's ordinance to strict-scrutiny analysis. While I agree that strict scrutiny is not appropriate in this case, I disagree with the majority's rationale.

In my view, strict scrutiny is not required because Convent misconstrues the nature of the City's municipal code as it applied to the case at bar. The question before us is not whether the ordinance burdens a fundamental right, but rather whether it is a valid exercise of the City's police power to act in the interest of the public health and safety of its inhabitants. *See Phillips v. Town of Oak Grove*, 333 Ark. 183, 968 S.W.2d 600 (1998).

A city's police power is "justified when it can be said to be in the interest of the public health, public safety, [and] public comfort, and when it is, private rights must yield to public security, under reasonable laws." *Id.* at 189, 968 S.W.2d at 603 (quoting *City of Little Rock v. Smith*, 204 Ark. 692, 695, 163 S.W.2d 705, 707 (1942)). As provided for by article 12, section 4 of the Arkansas Constitution, the General Assembly has authorized municipalities to legislate under the police power. Ark. Code Ann. § 14-55-102 (Repl. 1998). We review such ordinances using a rational-basis standard. *Phillips*, *supra*.

I concur.

**RHONDA K. WOOD, Justice, dissenting.** I dissent from the majority's decision to remand this case for further proceedings on Convent's as-applied constitutional claims for three reasons: (1) Convent failed to appeal the circuit court's denial of its motion to reinstate the claims following its administrative appeal; (2) Convent nonsuited the remainder of its

action after all its claims were dismissed and failed to include the as-applied claims in the refiling of its revived petition; and (3) even if the as-applied claims had survived, this court can and should rule on the merits of the summary-judgment order that dismissed all claims.

First, the circuit court dismissed Convent's as-applied claims for failure to exhaust the Rule 9 appeal. Once the Rule 9 appeal was resolved, Convent moved to reinstate the as-applied claims. The circuit court denied that motion. However, Convent did not argue on appeal that it was error for the circuit court to fail to reinstate these claims and deny the motion. We do not raise the parties' arguments for them unless it involves subject-matter jurisdiction, which this does not. *Kinchen v. Wilkins*, 367 Ark. 71, 238 S.W.3d 94 (2006).

Second, in May 2017, Convent's only live claim was for declaratory judgment, which it voluntarily dismissed—leaving no surviving claims. *See Zurich Gen. Acc. & Liability Ins. Co. v. Smith*, 209 Ark. 135, 189 S.W.2d 718 (1945) (explaining once plaintiff nonsuits, it has no pending claim). When Convent chose to refile its action within the one-year period, it did not include the as-applied claims in its new petition. *See Norrell v. Giles*, 343 Ark. 504, 36 S.W.3d 342 (2001) (holding that "when Appellant was granted a voluntary dismissal without prejudice, the action . . . was no longer a 'pending action' . . . When the claim was reinstated, it became a new action or proceeding, complete with a new docket number and court schedule."). While it is now the practice by circuit clerks to assign the same docket number, the case was still a new action. Convent did not include as-applied challenges in the new action.

Finally, even if the as-applied claims survive, the circuit court granted the City's summary judgment as to all claims. This court can determine the merits of summary

25

judgment. The parties fully briefed the as–applied claims below and on appeal; therefore, this court should consider whether summary judgment was appropriate on the record before the court.

*Mickey Steven*, for appellant.

*Marie-Bernard Miller*, Deputy City Attorney, for appellees.